I respectfully disagree with the majority's decision that the trial court's denial of Giles's Batson objection was clearly erroneous. The majority interprets our holding in Walker v. State, 611 So.2d 1133
(Ala.Crim.App. 1992), as requiring a reversal. I disagree.
The law in Alabama is clear that "`[a]n explanation based on a group bias where the group trait is not shown to apply to the challenged juror specifically' is evidence that the reason was a sham or a pretext."Walker, 611 So.2d at 1141, quoting Ex parte Branch 526 So.2d 609, 624
(Ala. 1987). Moreover, a prosecutor cannot "presume that, in absence ofa response to specific voir dire questioning as to whether theveniremember is in fact opposed to *Page 589 the death penalty, the veniremember is very religious, is a minister or minister's wife, or even is a member of a particular denomination."Walker, 611 So.2d at 1141. However, a prosecutor's personal knowledge about a veniremember can provide a race neutral reason for a strike. SeeWeaver v. State, 678 So.2d 260 (Ala.Crim.App. 1995), rev'd on other grounds, 678 So.2d 284 (Ala. 1996) (prosecutor's "personal knowledge" that potential juror's brother had been prosecuted by district attorney's office was race-neutral reason for a strike); McLeod v. State,581 So.2d 1144, 1154-55 (Ala.Crim.App. 1990) (on the basis of personal knowledge, prosecutor refuted veniremember's assertion that he had previously served on a jury that had returned a guilty verdict in a cocaine case and reason for strike was race-neutral.).
In Walker, the prosecutor represented to the trial court that he struck juror no. 68 because she was the wife of a minister and struck juror no. 123 because he was "very religious." The prosecutor stated that his information about juror no. 68 was provided by a juvenile probation officer, who believed that juror no. 68 was compassionate. The prosecutor stated that his information on juror no. 123 was provided by one of his investigating officers who knew the juror and her husband. This Court concluded that because the prosecutor did not ask any follow-up questions of the prospective jurors, but based his explanations on representations made by others, "the record offer[ed] nothing to give validity to the prosecutor's assumption about these two veniremembers." Walker, 611 So.2d at 1141. In Walker, the prosecutor unequivocally indicated that the prosecutor did not personally know juror no. 68 or juror no. 123 and that his reasons for striking them were entirely based on hearsay information. This Court stated in Naismith v. State, 615 So.2d 1323,1326 (Ala.Crim.App. 1993), "[b]oth Walker and Williams [v. State,620 So.2d 82 (Ala.Crim.App. 1992)] support the principle that a prosecutor, in exercising a peremptory strike, may not always rely on hearsay information obtained from a law enforcement officer."
The facts of this case are clearly distinguishable from those inWalker. The prosecutor in this case did not rely on hearsay information; he relied on his personal knowledge of juror no. 8. His reason was not based on an assumption of group bias but on his personal observations — outside the courtroom — of the juror and her religious convictions. I believe that a prosecutor's personal knowledge should be accorded deference. In stating that he believed that juror no. 8's religious convictions would prevent her from sitting in judgment, the prosecutor acknowledged that the juror had not responded to a general question in that regard in voir dire. However, the prosecutor further stated that based on his personal knowledge of the juror's religious beliefs, he believed she was not being candid. His reason for striking juror no. 8 was not based on mere suspicion, but was accompanied by his personal knowledge of juror no. 8 and his belief that her religious beliefs would prevent her from being a fair juror. Thus, the prosecutor considered that the trait applied to juror no. 8 specifically and provided a race-neutral reason based on his personal knowledge for striking juror no. 8.
Moreover, the record simply does not support a conclusion that the prosecutor was engaging in stereotyping, which clearly would require further voir dire. The majority correctly notes, "This court held in [Walker] that `a prosecutor cannot simply presume, without further questioning to "dispel any doubt," that a veniremember, who is under oath, did not answer a question truthfully merely because *Page 590 
the prosecutor has hearsay evidence to the contrary.' Id. at 1140." This is not a case of "self-imposed ignorance" on part of the prosecutor. Because the prosecutor's explanation was based upon his personal knowledge, it was not based upon a presumption. I do not believe that additional voir dire was required.[1] Once the prosecutor stated that his strike was based on personal knowledge and the trial court determined that the reason was race-neutral it became incumbent upon the appellant to show that the reason was pretext or sham. Ex parte Branch, 526 So.2d at 625. The appellant did not present any such rebuttal evidence.
Furthermore, I do not believe that the prosecutor's representation with regard to juror no. 8 conflicts with the fact that he did not strike a non-African-American minister. The prosecutor's representation that his strike was based on personal knowledge of juror no. 8 dispels the assumption that he made the strike based on the presumption that anyone involved in religious work or who maintained strong religious convictions would be biased. His answer clearly indicated that his conclusion that juror no. 8's religious convictions would inhibit her from sitting in judgment were tailored specifically to his knowledge of juror no. 8. I simply cannot presume, as the majority does, that the prosecutor engaged in disparate treatment when the record does not contain the representations made by the non- African-American minister during voir dire.
An appellate court's review of a trial court's determination on aBatson objection is confined to determining whether the finding was clearly erroneous. Because I believe that the facts of this case do not support a finding that the trial court's determination was clearly erroneous, I must respectfully dissent.
[1] This Court recently stated in Smith v. State, 797 So.2d 503, 518
(Ala.Crim.App. 2000), "`In the absence of a religious belief that may directly affect a vernireperson's ability to serve on a jury in a particular case, religious beliefs are not relevant to the voir dire process and questions regarding religious beliefs should be disallowed.'" Quoting Judge McDonald's concurring opinion in State v. Hodge,248 Conn. 207, 268, 726 A.2d 531, 564 (1999).